```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF SOUTH CAROLINA
                  CHARLESTON DIVISION



UNITED STATES OF AMERICA,    )
                             )    July 16, 2021
                             )
        -versus-             )    Charleston, SC
                             )
DAVID CURTIS WHITE,          )    2:21-424-1
                             )
          Defendant.         )
```

TRANSCRIPT OF DETENTION HEARING

BEFORE THE HONORABLE MOLLY H. CHERRY
UNITED STATES MAGISTRATE JUDGE, presiding

A P P E A R A N C E S:

For the Government:   DEAN H. SECOR, AUSA
                      US Attorney's Office
                      151 Meeting Street, Suite 200
                      Charleston, SC 29401


For the Defendant:    ALICIA V. PENN, ESQ.
                      Federal Public Defender
                      145 King Street, Suite 325
                      Charleston, SC 29401


Court Reporter:       KAREN E. MARTIN, RMR, CRR
                      PO Box 835
                      Charleston, SC 29402


Proceedings reported by stenographic court reporter.
Transcript produced with computer-aided transcription
                      software.

1                    INDEX OF WITNESSES

2    MATTHEW PINTO

3         Direct By Mr. Secor . . . . . . . . . . . . . .5

4         Cross By Ms. Penn . . . . . . . . . . . . . . 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          Friday, July 16, 2021

2      (WHEREUPON, court was called to order at 2:13 PM.)

3          THE COURT:  I think we are now ready to proceed.

4          Ms. Penn, is the defense ready?

5          MS. PENN:  We are, Your Honor.

6          THE COURT:  Mr. Secor, is the Government ready?

7          MR. SECOR:  Yes, Your Honor, we are.

8          THE COURT:  You may call the case.

9          MR. SECOR:  Yes, Your Honor.  This is case of

10   United States of America vs. David Curtis White, Criminal

11   No. 2:21-CR-424.  We're here for purposes of a detention

12   hearing.  Mr. White is represented by Ms. Alicia Penn of

13   the Federal Public Defender's Office and the Government is

14   prepared to go forward.

15          THE COURT:  Okay.  You may call your first

16   witness.

17          MR. SECOR:  And Your Honor, if I may, just a few

18   housekeeping matters before I call the witness?

19          THE COURT:  Certainly.

20          MR. SECOR:  I just wanted to put on the record

21   we believe we have grounds to even ask for detention based

22   under 18 USC Section 3142(f)(1)(A) and (B).  And what that

23   is under (f)(1)(A) is that the alleged offenses in the

24   indictment are crimes of violence and that's pursuant to

25   18 USC 3156(e)(4)(C).  In addition, under (f)(1)(B), Count

1    2 is an offense for which the maximum sentence is life

2    imprisonment.  For those two grounds, we believe we can go

3    forward with a detention hearing.

4            In addition, Your Honor, the Government believes

5    that it enjoys the rebuttable presumption under Title 18

6    USC Section 3142(e)(3).  And the basis for that is the

7    Counts 1 through 4 involve a minor victim under Sections

8    2251, 2252(a)(2) and 2422.  And Your Honor, the Government

9    is prepared to call its witness.

10           **THE COURT:**  Okay.  Let's take care of the

11   rebuttable presumption first.

12           Ms. Penn, is there any disagreement in that

13   regard?

14           **MS. PENN:**  No, Your Honor.

15           **THE COURT:**  Okay.  Thank you.

16           You may call your first witness.

17           **MR. SECOR:**  Thank you, Your Honor.  The

18   Government calls Agent Matthew Pinto.

19           MATTHEW PINTO, after being duly sworn, testified

20   as follows:

21           **THE WITNESS:**  I do.

22           **MR. SECOR:**  And Your Honor, may the Government

23   ask the agent to give summary testimony with leave for the

24   Government to ask follow-up or interjecting questions?

25           **THE COURT:**  Yes.

1           Any objection, Ms. Penn?

2           **MS. PENN:**  No objection, Your Honor.

3           **THE COURT:**  Thank you.

4                         DIRECT EXAMINATION

5  **BY MR. SECOR**

6  **Q**    Sir, could you state your full name for the record,

7  please?

8  **A**    Matthew William Pinto.

9  **Q**    And where do you work?

10 **A**    At FBI Charleston.

11 **Q**    And what are your general duties?

12 **A**    I'm an agent with the Violent Crime Task Force.

13 **Q**    And in that capacity, have you had the occasion to be

14 involved in the case of United States of America vs. David

15 Curtis White?

16 **A**    I do.

17 **Q**    And are you the special agent on the case?

18 **A**    I am.

19 **Q**    And are you the lead agent on the case?

20 **A**    I am.

21 **Q**    And are you familiar with the facts?

22 **A**    Yes.

23 **Q**    And are you prepared to go forward?

24 **A**    Yes.

25 **Q**    If you could, sir, please inform the Court of the

1    facts, please.

2    **A**    Yes, sir.    Our victim is a prepubescent minor victim,

3    and I'll just refer to her as victim as I go on.    On

4    September 15th, 2020, the victim's mother came to the FBI

5    and said that her daughter, our victim, had sent sexually

6    explicit images and videos via Snapchat to a Snapchat

7    moniker mark_fillips.

8        The next day the FBI gave consent to the preview of

9    the victim's phone and discovered a Snapchat account and

10   discovered that sexually explicit photos -- discovered the

11   sexually explicit photos in her deleted items of her

12   phone.    That same day, the FBI downloaded via consent her

13   entire Snapchat profile.    And they discovered

14   communications with accounts mark_fillips beginning on

15   8/19/2020.    Her age was listed between 13 to 17.    She's a

16   female.    And then they discovered there was conversations,

17   chats, audio, and video with mark_fillips.

18       On 10/6/2020, Snapchat provided records responsive to

19   administrative subpoena for mark_fillips at Snapchat

20   account.    They discovered a telephone number and the

21   provider was Verizon.    And then the most common IPs

22   belonging to Comcast and Verizon.

23       On that same day, Comcast provided records responsive

24   to an administrative subpoena in regards to those IP

25   addresses.    And they came back to a Mr. Jack White with an

1    address of 4725 June Street, North Charleston.

2            THE COURT REPORTER:  I'm sorry, 4725?

3            THE WITNESS:  4725 June Street.  And that's in

4    North Charleston.

5            On October 12th, 2020, Verizon Wireless provided

6    records responsive to an administrative subpoena in

7    regards to the telephone number previously referenced via

8    the Snapchat subpoena.  And that came back to a particular

9    iPhone with a particular serial number.  And I'll speak to

10   that shortly.

11           On October 15th, 2020, FBI conducted a forensics

12   interview with our victim, the prepubescent minor.  They

13   discovered that -- the victim advised that via Omegl,

14   which is an online chat forum -- O-M-E-G-L -- she gave her

15   Snapchat ID to several boys.  Thereafter, a few boys

16   contacted her via Snapchat to include mark_fillips.  And

17   she told the boys she was 11 to 12 years old.

18           She took pictures and videos of her naked body

19   to include her chest and vagina and sent them to some boys

20   via Snapchat per their direction and that was to include

21   mark_fillips.  She made new images and videos each time

22   she was asked to send them.

23           On January 26th, 2021, Snapchat provided records

24   responsive to a search warrant in regards to our victim's

25   Snapchat accounts and Snapchat account mark_fillips.  In

1    regards to the victim's Snapchat account, FBI discovered

2    communications with mark_fillips, including an image sent

3    by mark_fillips to the victim on 8/19/2020 and that was an

4    image of a list of questions.  And those list of questions

5    were used to elicit conversations with various minors and

6    drive them into conversations that become sexual in

7    nature.

8         They start with questions such as what is your

9    favorite color?  What is your favorite song?  What's your

10   favorite movie?  And then it moves on to such things as

11   what's your bra size?  What color underwear are you

12   wearing?  What is your favorite sexual position?

13        The search warrant results in regards to

14   mark_fillips revealed the following.  The user reported to

15   be 14 to 15 years old from California.  The same image

16   with the number of a list of questions was discovered.

17   And it was discovered that it was sent to dozens of young

18   girls.  It started the conversations and led those

19   conversations to become sexually explicit in nature and

20   images were sent back and forth at that point.

21        The user sent pictures and videos of himself

22   masturbating to multiple young girls.  The conversations

23   were entirely focused on either sexual discussions or they

24   discussed trading child pornographic images and videos.  A

25   few of the reporters self-reported as minors and being as

1    young as 13.

2          Examples of the conversations involving the

3    exchange of child porn included the following.  Snapchat

4    user boi2.0 requested child porn images of sex with

5    young -- of youngs.  And then they began to exchange

6    prepubescents of sexually explicit images and videos.

7          Matrix1322, conversations with that Snapchat

8    account, mark_fillips said, Send the youngest you've got.

9    Matrix1322 said, Like ten?  Mark_fillips says, Yeah, if

10   you've got it.  Matrix1322 then said, You like young

11   girls?  And mark_fillips said, Yeah, low key, I like

12   young.  Mark_fillips eventually sent a video file

13   depicting a naked prepubescent female engaged in sexual

14   contact with an adult male.  That was on October 29th,

15   2020.

16   **Q**    Was that in reference to Count 3?

17   **A**    Yes.

18   **Q**    Okay.  Go ahead.

19   **A**    Mark_fillips then told the other user he has an Apple

20   iPhone 11.  And he discussed using live video calls and

21   Omegl to contact young girls.

22         On October 31st, 2020, mark_fillips then sent to

23   matrix1322 a -- sent him video files including one

24   depicting a prepubescent female being raped by an apparent

25   adult male.  He told the user, I just throw them in the

1    hidden folder of my camera.

2    **Q**    Is that in regards to Count 4?

3    **A**    Yes, it is.

4    **Q**    Okay.

5    **A**    In conversations with Facebook account -- excuse me,

6    Snapchat account alfie_foryou, alfie_foryou sent

7    mark_fillips a link to a folder containing 109 files.

8    These were primarily videos of the rape of prepubescent

9    females.  Mark_fillips responded by sending child porn

10    images and videos in response.

11        Conversations with notlok01, mark_fillips sent the

12    video file previously exchanged with matrix1322 that was

13    discussed.  And mark_fillips said, Lowest is probably 15.

14        Akading5 said, How old are these girls?  Mark_fillips

15    replied, About 15.  Akading5 responded, Bro, one's 12, the

16    other two are probably ten.

17        On June 7th, 2021, the FBI executed a search warrant

18    at the previously mentioned address of 4725 June Street,

19    North Charleston.  Occupants of that address at that time

20    were Jack and Sharon White and their son, David White.

21        We seized several electronic devices to include an

22    iPhone found on David White.  We interviewed all.  And

23    during our interview with David White, which started as a

24    voluntary, non-custodial interview and eventually became a

25    Mirandized interview once he discussed the following.

1        David White said that after his 20th birthday, he

2    began to entice girls online through Omegl and Snapchat.

3    He said his Snapchat moniker was mark_fillips and he used

4    this to solicit girls as young as eight to send nude

5    images and videos.  He directed their actions to include

6    digital and vaginal penetration.  He sent pictures and

7    videos of his penis in exchange.

8        He claimed he did not specifically remember

9    soliciting from the victim.  But he acknowledged that he

10   used that same image with questions on it that I discussed

11   earlier.

12       He voluntarily showed the FBI his phone.  It was an

13   exact match to the serial number that we received on the

14   -- or that we discovered via the Verizon subpoena on

15   October 12th.  It was also the exact telephone number that

16   we received via -- that we discovered via the Snapchat

17   subpoena on October 6th, 2020.

18       On June 23rd, 2021, the FBI completed a forensics

19   download of David White's iPhone, the phone I previously

20   mentioned.  We discovered over 350 child porn images and

21   there were 125 child porn videos.  All of these were

22   depicting prepubescent females posing in various sexual

23   positions while exposing the breasts, buttocks, and vagina

24   and were engaged in various sexual acts by themselves with

25   other prepubescent children or adults.  And we also

1  discovered that image with the number of the list of

2  questions.

3  **Q**    Okay.  And then Counts 1 and 2 cover production of

4  child pornography, date range of August 2020 and

5  October 2020.  And then Count 2, enticement, and that

6  involves the same dates of August 2020 and October 2020.

7  So did your investigation reveal that he had, first of

8  all, caused minors to produce child pornography as well as

9  enticing them online?

10  **A**    Yes.

11  **Q**    Okay.

12         **MR. SECOR:**  The Government has no further

13  questions.

14         **THE COURT:**  Ms. Penn, any cross?

15                      CROSS-EXAMINATION

16  BY MS. PENN

17  **Q**    Agent Pinto, in your review of these electronic

18  devices, is there any text message or communication that

19  indicates Mr. White planned to visit any of these minors

20  or any of these girls?

21  **A**    No, ma'am.

22  **Q**    And is there any indication, any of these images were

23  filmed or photographed by Mr. White?

24  **A**    No, ma'am.

25  **Q**    So all of the pornography is -- or at least the

1    pornography that is being exchanged on Snap -- Snapchat or

2    Omegl are pictures the girls are taking of themselves; is

3    that correct?

4    **A**    Yes, ma'am.

5    **Q**    And were you -- did you personally execute the search

6    warrant on his house?

7    **A**    Yes, ma'am.

8    **Q**    And this is the beginning of June, right?  Is that

9    right?

10    **A**    Yes, ma'am.

11    **Q**    And during that execution of the search warrant, was

12    Mr. White and his family, were they cooperative?

13    **A**    Yes, they were.

14    **Q**    Was he evasive or anything less than forthcoming to

15    your questions?

16    **A**    No, ma'am.

17    **Q**    Okay.  And you said this -- the conversation you had

18    with him started as a voluntary interview, right?

19    **A**    That's correct.

20    **Q**    And how long did it stay a voluntary interview?

21    **A**    Maybe 15 minutes.

22    **Q**    And what changed it from a voluntary interview to a

23    Mirandized confession?

24    **A**    It changed when he told us that his Snapchat account

25    was that account in question.

1    **Q**    Oh, I see.  So he said at some point that his

2    Snapchat account was the mark_fillips Snapchat, is that

3    what it is?

4    **A**    Yes.

5    **Q**    Okay.  And did he say that in response to a question

6    from you or from anyone else?

7    **A**    Yes.

8    **Q**    Did someone just ask him, Is this your Snapchat?

9    **A**    Yes.

10    **Q**    Okay.  And then you Mirandized him, correct?

11    **A**    That's correct.

12    **Q**    And how long did he speak or answer questions after

13    that?

14    **A**    Maybe for about 20 minutes beyond that.

15    **Q**    And was this conversation recorded?

16    **A**    Yes, it was.

17    **Q**    Okay.  Video?  Audio?

18    **A**    Audio.

19         **MS. PENN:**  Court's indulgence?

20         **THE COURT:**  Certainly.

21         **MS. PENN:**  No further questions.  Thank you.

22         **THE COURT:**  Okay.

23         Any, Mr. Secor?

24         **MR. SECOR:**  No further questions from the

25    Government.

1        THE COURT:  Okay.  The Court has a question just

2   for point of clarification.

3        Agent Pinto, you were asked whether Mr. White

4   requested images from any of the minors.  And I just want

5   to understand.  The minor victim identified by initials in

6   the indictments, and maybe I misunderstood, I thought you

7   testified that he did solicit images from -- specifically

8   from that individual.

9        THE WITNESS:  Yes, Your Honor, he did solicit

10  the images from our victim and other individuals,

11  prepubescent females online.  The question I think the

12  defense asked was did he take photos on his own.

13       THE COURT:  On his own, okay.

14       THE WITNESS:  He did not take photos of the

15  girls.  The girls sent him photos.  He took pictures of

16  himself and sent them.

17       THE COURT:  Thank you for that clarification,

18  Agent Pinto.

19       Ms. Penn, any follow up in light of the Court's

20  questions?

21       MS. PENN:  Just briefly.

22       The victim listed in the complaint, she lives in

23  Minneapolis, Minnesota; is that correct.

24       THE WITNESS:  That is correct.

25       MS. PENN:  I have no follow up, Your Honor.

1      THE COURT:  Okay.

2           Any follow up, Mr. Secor?

3      MR. SECOR:  None from the Government.

4      THE COURT:  Okay.  The witness may step down.

5      THE WITNESS:  Thank you, Your Honor.

6      MR. SECOR:  And the Government has no further

7  witnesses, Your Honor.

8      THE COURT:  Does or does not?

9      MR. SECOR:  Does not.

10      THE COURT:  Okay.  Any other evidence,

11  Mr. Secor?

12      MR. SECOR:  No, Your Honor.

13      THE COURT:  Okay.  Thank you.

14           Ms. Penn?

15      MS. PENN:  No witnesses from the defense, Your

16  Honor.

17      THE COURT:  Okay.  Is counsel ready for the

18  Court to hear argument?

19      MR. SECOR:  Yes, Your Honor.

20      MS. PENN:  Yes, ma'am.

21      THE COURT:  Okay.  Mr. Secor, I'll hear from

22  you.

23      MR. SECOR:  Yes, Your Honor.  The Government, in

24  addition to enjoying the rebuttable presumption, thinks

25  that the factors which the Court must consider call for

1   detention of this defendant, and that's specifically under

2   18 USC Subsection 3142(g)(1), first of all, the nature and

3   circumstances of the offense charged.  The offenses for

4   which he's charged are, next to actual hands-on sexual

5   molestation is the worst offense against the child in the

6   sexual realm that can occur; and that is, enticing them to

7   actually produce child pornography images.  So we think

8   that the nature and circumstances of the offense charged

9   speaks for itself in that regard.

10          These offenses, I would point out, are crimes of

11  violence under Title 18.  And they also involve a minor

12  victim.  And there's also testimony that there were many

13  other -- I believe the testimony was dozens of other

14  victims that the defendant solicited online, minor

15  victims.

16          The subsection (g)(2), the weight of the

17  evidence against the person, we believe is strong.  The

18  defendant gave a almost full confession.  He only hemmed a

19  little bit on the issue of remembering exactly this

20  particular victim.  But the evidence shows that her images

21  were contained in what was found by the Government in its

22  examination of search warrant returns and forensics

23  reviews.

24          Also, the history and characteristics of the

25  person under Subsection (3)(a), we acknowledge that there

1   was no criminal history indicated on the pretrial services

2   report.  I'll proffer to the Court that I've been informed

3   by the FBI that they've reached out to Hanahan Police

4   Department and have determined that the defendant was

5   charged on July 13 with DUI.  It's my understanding it

6   involved a wrecked vehicle as well.  It's so recent that

7   it's not in NCIC.  And from what I gather they have not

8   even finished preparing the paper reports for their file

9   in that regard.  But it's my understanding, and they can

10  dispute it if they like, but that would go to a history

11  relating to drug or alcohol abuse which would also comport

12  with the information in the Pretrial Services Report

13  concerning drug and alcohol usage.  And I believe, if I'm

14  not wrong, the report refers to marijuana and cocaine use.

15          Finally, under -- well, in addition under

16  (g)(B), I believe that the DUI charge would indicate --

17  and that's (g)(1)(B) -- excuse me, (g)(3)(B), that the

18  person was on release from another offense whenever he was

19  indicted in this case.

20          Finally, under Subsection (g)(4), we believe

21  that the nature and seriousness of the danger to any

22  person or the community that would be posed by the

23  person's release should be considered.  We think it's

24  obvious that he's a danger to minor victims online.  And

25  that could be done easily, as we all know, from anywhere,

1    doesn't have to be his house.  It could be anywhere that

2    he might be if he has access to computers.

3          And also we would point out that the DUI is an

4    indication that he's a danger to himself.  And that

5    translates or refers back to his reported history of using

6    drugs.

7          Thank you, Your Honor.

8          **THE COURT:**  Thank you, Mr. Secor.

9          Ms. Penn, I'll hear from you.

10         **MS. PENN:**  Thank you, Your Honor.  First, to

11   rebut the presumption of detention in this case, I'd like

12   to tell the Court that Mr. White is 21 years old.  He

13   lives with his parents.  He always has.  He has no

14   passport.  He has a job.  He was working at Papa Johns as

15   a pizza maker and a cashier.  And I think that's enough to

16   rebut the presumption in this case just to show that he

17   has ties to the community and he is not a flight risk and

18   that he has a stable place to go.

19         To go towards the question of why he should be

20   released, the allegations in this case are, obviously,

21   extremely serious.  And we take them very seriously.  And

22   I know the Government does as well.  But just the fact the

23   charges are serious is not enough of a reason to

24   immediately detain Mr. White.  If that were the case,

25   there could just be a blanket section of the code that

1    says if you are charged with this, then you are detained.

2    And that is not the case.

3           So things that would put this Court -- that

4    might put this Court a little more at ease in releasing

5    Mr. White are that if they were to be released, he would

6    go back and live with his parents.  He has been living

7    there for his entire life.

8           In addition to that, he has known about these

9    charges now for about a month.  Because when his home was

10   searched and he was questioned, he was not arrested at

11   that time.  He was not immediately taken into custody.

12   Instead, he was left at home where he had to think about

13   what was coming.

14          And during that time he had no devices.  All of

15   his devices were seized.  So if the Government is

16   concerned about I think they said the danger to minor

17   victims online, he no longer has online access.  So that

18   is eased somewhat by the Government seizing all of his

19   things.

20          His parents are both here.  They are present in

21   the courtroom.  His mother has prepared a statement that

22   I'll ask her to read at the appropriate time.  They are

23   both lifelong members of the community.  They are

24   teachers.  His father has just retired after 41-some years

25   of teaching school to children.  And his mother is still

1    working as a teacher.  So they have both assured me that

2    because his father is retired, that he can be at home with

3    his son, if need be, to monitor him and make sure that he

4    doesn't do anything he's not supposed to do.

5             They have also gone so far -- I explained to

6    them the concept of third-party custody.  They are willing

7    to be third-party custodians if that is something the

8    Court thinks is necessary.

9             Mr. White -- so I'll tell the Court, the other

10   people in the courtroom are his brothers, his pastor, the

11   junior pastor of his church, his high school teacher.

12   They do not have anything formal prepared.  They're here

13   just to show their support of him.

14            And they have, obviously, heard at this point

15   the terrible allegations.  And they are still willing to

16   support him and believe that he can be trusted at least

17   until his case is finished.  They understand that these

18   are serious charges.  They carry a lot of time.  There is

19   a potential for Mr. White to go to prison.  But before

20   that happens, they ask that he be able to stay in the

21   community with them.

22            Your Honor, I'm going to ask Mr. White's mother

23   to speak at this time.  She's prepared a brief statement.

24            **THE COURT:**  Okay.

25            **MS. PENN:**  You can come on up and stand right

1    there and tell the judge your name.

2              **THE DEFENDANT'S MOTHER:**  Sharon White.  As

3    Ms. Penn has already indicated, my husband and I have

4    flexible hours at this point where we would be able to

5    monitor David.  He would be watched carefully 24/7.

6              We are in the process of getting him into a

7    residential rehab facility where he would get counseling

8    and get help for the issues that have brought him to this

9    point.  There is a waiting list for that facility.  How it

10   works is he calls in every day to say I'm still waiting.

11   I want to come.  And as soon as there's a spot, they bring

12   him in.

13             Also, you have already heard that we have a

14   group of people -- sorry -- who despite the seriousness of

15   these charges that they have heard today are willing to

16   step in and help David in whatever capacity is necessary,

17   whatever that means, supervision, monitoring, mentoring,

18   guidance, counseling.  Any of those things that they can

19   do to help David, they are willing to do.  And that's

20   because they believe that David is worth helping.  The

21   David that you heard about is not the David that we know.

22             **MS. PENN:**  We have nothing further, Your Honor.

23             **THE COURT:**  Thank you, Ms. Penn.

24             Mr. Secor, anything further from the Government?

25             **MR. SECOR:**  Nothing further, Your Honor.

1          **THE COURT:** All right. The Court will be in

2     recess for about five minutes.

3          (WHEREUPON, a short break was taken.)

4          **THE COURT:** Please be seated. I'm sorry, I said

5     that when I walked in. My apologies.

6          So the Government has moved to detain and

7     there's no dispute that the rebuttable presumption

8     applies. I do find that the defendant has presented

9     evidence sufficient to rebut the presumption. But even

10    after considering the presumption and the other factors in

11    this matter, detention is warranted. I find that the

12    Government has proven by clear and convincing evidence

13    that there are no condition or combination of conditions

14    of release that will reasonably assure the safety of any

15    other person in the community.

16         This decision is made for -- based upon the

17    evidence that we have heard this afternoon. The weight of

18    the evidence against the defendant is strong. He is

19    subject to a lengthy period of incarceration if convicted.

20    And as noted by the Government, the crimes set forth are

21    considered crimes of violence against minors. And of

22    particular note to the Court is the age of the minors that

23    came out in the evidence before the Court this afternoon.

24         I do want to thank the family and friends who

25    are here. I know this is difficult for everyone. And

1   Mr. White is going to need your continued love and support

2   in this matter.  I appreciate your being here.  That's not

3   lost on the Court.  And I do know it's hard for all of

4   you.  And I thank you for your time this afternoon and

5   encourage you to continue with your support with

6   Mr. White.  He's going to need it.  And he's lucky to have

7   that support from you.

8           Anything further from the Government, Mr. Secor?

9           **MR. SECOR:**  No, Your Honor.

10          **THE COURT:**  And Ms. Penn, anything further?

11          **MS. PENN:**  No, Your Honor.

12          **THE COURT:**  This matter is adjourned.  Thank

13  you.

14      (WHEREUPON, court was adjourned at 2:46 PM.)

15                              * * *

16  I certify that the foregoing is a correct transcript from

17  the record of proceedings in the above-entitled matter.

18      s/Karen E. Martin                  8/10/2021
    _____         _____
19  Karen E. Martin, RMR, CRR          Date

20

21

22

23

24

25